DA DAI MAI, PLAINTIFF V. CAROLINA HOLDINGS, INC. AND R. GREGORY TOMCHIN, SUBSTITUTE TRUSTEE, DEFENDANTS

No. COA09-1685

(Filed 20 July 2010)

## 1. Constitutional Law— due process—municipal assessment foreclosure—notice

N.C.G.S. § 105-375 (pre-2006), which applied here to a municipal lien foreclosure, was not unconstitutional in its notice provisions. The statute requires notice by a registered or certified letter to lienholders well in advance of the execution sale and affords an opportunity to object to the sale. The fact that personal

service of notice of the date fixed for the sale was not required did not obviate the prior notice.

## 2. Liens— municipal assessment—execution sale—extinguishment of deed of trust—language in notice of sale

The trial court did not err by granting summary judgment for plaintiff in an action in which plaintiff sought a declaratory judgment that defendant's deed of trust had been extinguished by an execution sale. Notwithstanding language in the notice of sale, plaintiff took the property free and clear of defendant's lien. N.C.G.S. § 105-375.

## 3. Liens— municipal assessment and sale—free of other liens

The trial court did not err by granting summary judgment for plaintiff in a declaratory judgment action to determine whether an execution sale was free of defendant's lien. The uncontested facts show that the city sent defendant notice at least 30 days prior to docketing a judgment for tearing down the apartment building, then waited at least 3 months following the indexing of the judgment to execute a sale of the property. Issues concerning the caption of the underlying judgment and notice as well as the final price were not raised in the trial court and were not addressed.

Appeal by defendants from order entered 9 September 2009 by Judge Robert P. Johnston in Mecklenburg County Superior Court. Heard in the Court of Appeals 7 June 2010.

*Bradley Arant Boult Cummings, L.L.P., by Michael C. Griffin, for plaintiff-appellee.*

*John E. Hodge, Jr., for defendant-appellant Carolina Holdings, Inc.*

BRYANT, Judge.

On 12 September 2008, plaintiff Da Dai Mai filed a complaint for declaratory judgment and injunctive relief against defendants Carolina Holdings, Inc., and R. Gregory Tomchin, substitute trustee, under a deed of trust granted in favor of Carolina Holdings. Plaintiff sought a declaration that the deed of trust had been extinguished and an injunction to prevent Carolina Holdings from foreclosing under the deed of trust. Carolina Holdings answered, denying plaintiff's claims and asserting various defenses and counterclaims. Both par-

ties moved for summary judgment. On 9 September 2009, the trial court denied Carolina Holdings' motion and granted summary judgment in favor of plaintiff. Carolina Holdings appeals. As discussed below, we affirm.

## Facts

Carolina Holdings owned and managed Eastway Apartments ("the property"), an apartment complex in Charlotte. On 8 July 2002, Carolina Holdings conveyed the property to Lucky Seven, Inc., taking back a first lien purchase money deed of trust to secure a promissory note in the amount of $830,000.00. The purchase money deed of trust was recorded on 12 July 2002. On 30 July 2002, Lucky Seven conveyed the property to Li Cardwell, a relative of Lucky Seven's president, and on 31 March 2003, Li Cardwell conveyed the property to Anna Cardwell, a minor for whom Li Cardwell was custodian.

In 2004, the City of Charlotte began proceedings to demolish the apartments on the property. After the city condemned the property, Lucky Seven advised Carolina Holdings that it could not make note payments. Carolina Holdings gave Lucky Seven a delay on the payments. On 9 September 2004, Carolina Holdings sent the city a letter advising that it held a mortgage on the property and that Lucky Seven had agreed to turn the property over to Carolina Holdings if Lucky Seven could not find another new owner. Carolina Holdings advised that, if this occurred, Carolina Holdings would repair or demolish the property. By letter dated 17 September 2004, the city advised Carolina Holdings that its demolition order had been upheld by the Housing Appeals Board and that Anna Cardwell, the current owner, had had until 15 September 2004 to appeal to superior court.

On 7 January 2005, the city filed nine notices of lien for the net costs of removing or demolishing the apartments on the property, work which occurred between 20 December 2004 and 7 January 2005. On 5 July 2005, the city sent letters to the property owner and Carolina Holdings, as a lienholder of record, notifying them that if the liens were not paid within thirty days, the city would docket a judgment against the property. The city also published notice of intent to docket judgment in a local paper during July 2005. On 8 August 2005, the city filed a certificate of lien and judgment and execution issued upon the judgment for sale of the property. The notice of sale specified that it was offered to the highest bidder subject to any mortgages, liens, or taxes owed. The notice of sale was published but was not served on Carolina Holdings. The city was the high bidder at the exe-

cution sale, but plaintiff Mai filed an upset bid and purchased the property, a sale confirmed on 7 February 2006. Mai conducted a title search and discovered Carolina Holdings' deed of trust. Mai recorded his deed to the property on 15 March 2006. Carolina Holdings discovered the sale of the property in March 2007 and contacted Mai. Carolina Holdings began foreclosure proceedings on 11 July 2008. In response, on 12 September 2008, Mai filed his complaint for declaratory judgment and injunctive relief in this case.

---

On appeal, Carolina Holdings makes three arguments: that the trial court erred in granting Mai's motion for summary judgment because (I) N.C. Gen. Stat. § 105-375 is unconstitutional in that in fails to provide due process to lienholders of record; (II) the property was conveyed subject to a recorded deed of trust lien; and (III) there were irregularities in the execution sale and the price paid was inadequate.

*I*

**[1]** Carolina Holdings first argues that the trial court erred in granting Mai's motion for summary judgment because N.C. Gen. Stat. § 105-375[1] violates the due process clauses of the United States and North Carolina Constitutions by providing insufficient notice of sale to lienholders of record. We disagree.

Summary judgment is proper when there is no genuine issue of material fact and any party is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009); *Hardy v. Moore County*, 133 N.C. App. 321, 323, 515 S.E.2d 84, 85 (1999). "[P]rior to an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide 'notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 795, 77 L. Ed. 2d 180, 185 (1983) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 94 L. Ed. 865, 873 (1950)). We now turn to the relevant statutory procedures.

Our North Carolina General Statutes provide that a city may file a lien against real property for costs associated with its demolition of a dwelling on the property because the dwelling was "unfit for human habitation." N.C. Gen. Stat. § 160A-443(5)-(6) (2009). The lien should

---

1. N.C.G.S. § 105-375 was amended in 2006. The prior version of the statute applied to the instant case and is therefore cited and quoted herein.

"be filed, have the same priority, and be collected as the lien for special assessment[.]" N.C.G.S. § 160A-443(6)(a). "Assessment liens may be foreclosed under any procedure prescribed by law for the foreclosure of property tax liens." N.C. Gen. Stat. § 160A-233(c) (2009). The relevant tax lien foreclosure procedures are set forth below:

> [t]he tax collector filing the certificate [showing the name of the taxpayer for each parcel on which the taxing unit has a lien for unpaid taxes, together with the amount of taxes, penalties, interest, and costs that are a lien thereon; the year or years for which the taxes are due; and a description of the property] shall, at least 30 days prior to docketing the judgment, send a registered or certified letter, return receipt requested, to . . . all lienholders of record who have a lien against the listing taxpayer or against any subsequent owner of the property . . . *stating that the judgment will be docketed and the execution will be issued thereon in the manner provided by law.*

N.C. Gen. Stat. § 105-375(c) (2005) (emphasis added). Subsection (d) provides that

> [i]mmediately upon the docketing and indexing of a certificate . . . the taxes, penalties, interest, and costs shall constitute a valid judgment against the real property described therein[.]

N.C.G.S. § 105-375(d)[2]. In addition, subsection (f) provides that

> [a]t any time prior to the issuance of execution, any person having an interest in the real property to be foreclosed may appear before the clerk of superior court and move to set aside the judgment on the ground that the tax has been paid or that the tax lien on which the judgment is based is invalid.

N.C.G.S. § 105-375(f). Finally, subsection (i) provides that

> [a]t any time after three months and before two years from the indexing of the judgment . . . execution shall be issued at the request of the tax collector . . . [and] [i]n lieu of personal service of notice on the owner of the property, registered or certified mail notice shall be mailed to the listing owner at the listing owner's last known address at least 30 days prior to the day fixed for the sale. The notice must also be mailed to the current owner by reg-

---

2. General Statute § 7A-109 requires "that all documents received for docketing shall be immediately indexed either on a permanent or temporary index. The rules may prescribe any technological process deemed appropriate for the economical and efficient indexing, storage and retrieval of information." N.C. Gen. Stat. § 7A-109(c) (2009).

istered or certified mail if notice was required to be mailed to the current owner pursuant to subsection (c) of this section.

N.C.G.S. § 105-375(i), (i)(2) (2005).

We believe that the notice to lienholders of record required by § 105-375 is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mennonite*, 462 U.S. at 795, 77 L. Ed. 2d at 185 (citation and internal quotation marks omitted). First, § 105-375 requires mailing a letter to lienholders of record by registered or certified mail which states "that the judgment will be docketed and the execution will be issued thereon in the manner provided by law." N.C.G.S. § 105-375(c). Furthermore, the notice apprising them of a pending execution is sent well in advance of the execution sale: the letter shall be sent "at least 30 days prior to docketing the judgment[,]" N.C.G.S. § 105-375(c), and the execution sale shall not occur until at least three months following the indexing of the judgment. N.C.G.S. § 105-375(i). Second, § 105-375 affords lienholders of record an opportunity to present their objections. Following notice' of the docketing of the judgment and before the issuance of the execution, § 105-375(f) provides that "any person having an interest in the real property . . . may appear before the clerk of superior court and move to set aside the judgment on the ground that the tax has been paid or that the tax lien on which the judgment is based is invalid." N.C.G.S. § 105-375(f). We therefore believe that § 105-375 comports with due process requirements.

Carolina Holdings relies on *Mennonite* for the proposition that § 105-375 deprives lienholders of record of their property without due process of law. This reliance is misplaced. In *Mennonite*, the United States Supreme Court invalidated an Indiana statute on due process grounds because the statute required only that the city publish notice and post notice in the county courthouse of a pending tax sale. The Court held that, by failing to require notice by mail or personal service of the sale to mortgagees of the property, the statute failed to require notice "reasonably calculated under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 795, 77 L. Ed. 2d at 185.

As discussed above, unlike the Indiana statute at issue in *Mennonite*, N.C.G.S. § 105-375 requires notice by a registered or certified letter to lienholders of record well in advance of the execution

sale that the judgment will be docketed and that execution will be issued, and affords them an opportunity to object to the sale. The fact that subsection (i) does not require personal service of notice of the date fixed for the sale does not obviate the prior notice. Carolina Holdings received notice that its lien might be extinguished as required by subsection (c). *See* N.C.G.S. § 105-375 (c) ("The tax collector . . ., shall, at least 30 days prior to docketing the judgment, send a registered or certified letter, return receipt requested, to . . . *all lienholders of record*") (emphasis added). The notice sent alerted Carolina Holdings "that the judgment will be docketed and *the execution will be issued thereon in the manner provided by law.*" N.C.G.S. § 105-375 (c) (emphasis added). Carolina Holdings received due process by way of notice that a judgment had been docketed against real property on which it held a lien, and that execution would be issued as provided by our General Statutes. Therefore, the intent of N.C.G.S. § 105-375 as set out in subsection (a)—"that all persons owning interests in real property know or should know that the tax lien on their real property may be foreclosed and the property sold for failure to pay taxes"—was clearly carried out in the instant case.

Moreover, the North Carolina Supreme Court has previously suggested in *dicta* that the notice provisions of § 105-375 are constitutional and protect due process rights under both the federal and State constitutions. *See Henderson County v. Osteen*, 292 N.C. 692, 708, 235 S.E.2d 166, 176 (1977) ("[N]otice [under N.C.G.S. § 105-392 (now N.C.G.S. § 105-375)], . . . would, in our opinion, be sufficient to satisfy the fundamental concept of due process of law and, therefore, to comply with Article 1, § 19, of the Constitution of North Carolina and the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States."). Thus, we see no basis for defendants' argument that § 105-375 violates due process by failing to provide notice to lienholders of record. Defendants' argument that N.C.G.S. § 105-375 is unconstitutional is overruled.

*II*

[2] Carolina Holdings next argues the trial court erred in granting summary judgment because the property was conveyed to plaintiff subject to its lien. We disagree.

"The purchaser at the execution sale shall acquire title to the property in fee simple free and clear of all claims, rights, interests, and liens except the liens of other taxes or special assessments not paid from the purchase price and not included in the judgment."

N.C.G.S. § 105-375(i). "[T]he effect of a judgment foreclosing a tax lien on real property is to extinguish all rights, title and interests in the real property subject to foreclosure . . . ." *Overstreet v. City of Raleigh*, 75 N.C. App. 351, 353, 330 S.E.2d 643, 645 (1985).

Here, the notice of sale offered the property to the highest bidder "SUBJECT TO ANY MORTGAGES, LIENS OR TAXES" that might be owed on the property, and the sheriff's deed specified that the property was conveyed to plaintiff "subject to all prior liens and encumbrances." Carolina Holdings contends that this language means that the property was conveyed to plaintiff subject to its lien. However, notwithstanding the language in the notice of sale, the statute makes clear that a purchaser at an execution sale takes the property "in fee simple free and clear of all claims, rights, interests, and liens except the liens of other taxes or special assessments not paid from the purchase price and not included in the judgment." N.C.G.S. § 105-375(i). Thus, only "liens of other taxes or special assessments not paid from the purchase price and not included in the judgment" survive a judgment foreclosing a tax lien on real property. Thus, when plaintiff purchased the property at the execution sale, he took the property free and clear of Carolina Holdings' lien. This argument is overruled.

*III*

[3] Carolina Holdings also argues the trial court erred in granting summary judgment because there were irregularities in the execution sale and the price paid was inadequate. We disagree.

Carolina Holdings first contends that it did not receive proper notice of intent to docket judgment. However, § 105-375(c) requires

> the tax collector . . . shall, at least 30 days prior to docketing the judgment, send a registered or certified letter, return receipt requested, to the listing taxpayer at his last known address, and to all lienholders of record who have a lien against the listing taxpayer or against any subsequent owner of the property . . . stating that the judgment will be docketed and the execution will be issued thereon in the manner provided by law.

N.C.G.S. § 105-375(c). The record indicates that the city fully complied with the provisions of § 105-375. On 7 January 2005, the city filed notice of statutory liens in the amounts of $25,051.00; $20,212.00; $20,448.00; $6,500.00; $14,027.00; $18,303.00; $10,025.00; $4,550.00; and $16,009.00, for a total of $135,125.00, in addition to interest on that amount and a $450.00 administrative fee. On 5 July 2005, the city

sent a letter by certified mail to Carolina Holdings' address at 408 W. Roosevelt Blvd., Monroe, North Carolina, 28110. The letter contained a description of the property, and stated

> [b]y copy of this letter, we are . . . giving notice to all lienholders of record[,] [and] [i]f the liens plus accumulated interest, along with a[n] . . . administrative fee . . . are not paid within thirty (30) days after the date of this letter . . . the City of Charlotte will docket a judgment against the property for the full amount of the liens, any accumulated interest, and the administrative fees. An execution will be issued upon the judgment as provided by law.

On 8 August 2005, the city docketed a judgment against the property, and on 9 January 2006, the city held a public auction. In sum, the uncontested facts show that the city sent notice to Carolina Holdings at least 30 days prior to docketing a judgment, and then waited at least three months following the indexing of the judgment on 8 August 2005 to execute a sale of the property on 9 January 2006. We see no irregularity in the city's actions. Carolina Holdings' argument on this point is overruled.

In its brief to this Court, Carolina Holdings also contends that there were irregularities in the caption of the underlying judgment and notice, and that the final price was inadequate. However, our review of the record indicates that these issues were not raised in the trial court, either in the parties' pleadings or motions for summary judgment. "A contention not raised in the trial court may not be raised for the first time on appeal." *Town of Chapel Hill v. Burchette*, 100 N.C. App. 157, 159-60, 394 S.E.2d 698, 700 (1990). Thus, we do not address these contentions by Carolina Holdings.

Affirmed.

Chief Judge MARTIN and Judge ELMORE concur.